**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**UNITED STATES OF AMERICA**

                                     **CASE NO. 1:25-cr-00036-AW-MAL**

**v.**

**DEVON OLIVER**

_____/

**GOVERNMENT'S SENTENCING MEMORANDUM AND
RESPONSE TO PRESENTENCE INVESTIGATION REPORT**

The government files this Sentencing Memorandum and Response to Presentence Investigation Report to address several guidelines calculation issues and some of the 18 U.S.C. § 3553(a) factors.

## Background

On October 14, 2025, a 911 caller reported possible gun and gang activity at an apartment complex in Gainesville, Florida. *See* PSR ¶ 20. The complainant stated that a black male named "Devon Oliver" was walking around while armed with a gun. *See id.* Dispatch advised that Oliver was a documented gang member and had history of firearms violations. *Id.* When law enforcement responded, they observed the defendant and other males walking up and down the stairwell of a building, but they did not observe the defendant with a gun on that day. *Id.*

Approximately one week later, on October 22, 2025, law enforcement was patrolling the same area when they observed the defendant riding an electric scooter.

*Id.* ¶ 16. Law enforcement attempted to detain the defendant for a traffic violation. *Id.* However, the defendant fled on foot while clutching an item in his waistband. *Id.* The defendant was subsequently located hiding in a stairwell and arrested. *Id.* ¶ 17.

While fleeing, the defendant discarded a PSA Dagger 9mm pistol in the bushes next to an apartment. *Id.* ¶¶ 18–19. The serial number that should have been located on the frame was cut off and removed. *Id.* ¶ 18. The firearm had an extended magazine and was loaded with 22 rounds of ammunition. *Id.*

Post-*Miranda*, the defendant was asked how he obtained the gun. *See id.* ¶ 19. The defendant responded that he "encountered" (but did not purchase) it from a pawn shop. *Id.* The defendant later stated that he purchased the firearm from another person for $1,500 in Gainesville. *Id.* The defendant denied removing the serial number from the firearm. *See id.*

On December 16, 2025, the defendant was indicted by a federal grand jury in the Northern District of Florida. ECF No. 1. The defendant was charged with one count of Possession of a Firearm with a Removed Serial Number, in violation of 18 U.S.C. § 922(k). *Id.*

On February 12, 2026, the defendant pled guilty to count one. During the change-of-plea hearing, the defendant admitted that he knew the firearm did not have a serial number when he possessed it on October 22, 2025. ECF No. 24 at 2. The defendant further admitted that he is depicted in a photograph holding the same

firearm *before* the serial number was removed. *Id.* at 3. However, the defendant denied that he was the one who removed the serial number. The defendant did not provide any other explanation for who removed the serial number. The defendant also denied having any knowledge as to why the serial number was removed.

## Argument

I.   **The Guidelines Should Include a 4-Level Enhancement Because the Defendant Knew the Firearm Involved in the Offense Was Not Marked with a Serial Number.**

The government agrees that the applicable guideline for a violation of § 922(k) is U.S.S.G. § 2K2.1 and that the base offense level is 12. PSR ¶ 27. However, the PSR fails to include a specific offense characteristic. Pursuant to § 2K2.1(b)(4), if "the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number … or was willfully blind to or consciously avoided knowledge of such fact, increase by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B)(ii). In this case, the defendant admitted that he knew that the serial number on the firearm had been removed. *See* ECF No. 24 at 2. Accordingly, a 4-level enhancement is appropriate. *See* U.S.S.G. § 2K2.1(b)(4)(B)(ii).

At sentencing, this specific offense characteristic is an important consideration that is not already taken into account by the base offense level. *See* U.S.S.G. § 2K2.1, Application Note 8(a) (explaining that the enhancement applies to offenses involving a violation of 18 U.S.C. § 922(k)). Indeed, there is no lawful

3

purpose for which a person would prefer to have an unmarked firearm. *See United States v. Price*, 111 F.4th 392, 406 (4th Cir. 2024) ("[W]e agree with the Third Circuit that there is 'no compelling reason why a law-abiding citizen' would use a firearm with an obliterated serial number and that such weapons would be preferable only to those seeking to use them for illicit activities." (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010))). The only reason to carry a pistol that is effectively untraceable is because the firearm is stolen or it is intended to be used in furtherance of other criminal activity, or both. *See id.* Furthermore, there is no way to verify whether the firearm was in fact stolen due to the lack of serial number. Thus, absent the inclusion of a 4-level enhancement, the guidelines would not adequately reflect the true nature and seriousness of the defendant's conduct.

## II.    The Guidelines Should Include a 2-Level Enhancement for Obstructing the Administration of Justice.

The government also objects to the PSR's determination that the defendant did not obstruct justice in any way. *See* PSR ¶¶ 24, 31. Pursuant to U.S.S.G. § 3C1.1, a 2-level enhancement is appropriate for the act of "providing materially false information to a judge or magistrate." *United States v. Reese*, 238 F. App'x 461, 463 (11th Cir. 2007) (quoting Application Note 4(F)). "Material" information includes "information that, if believed, would tend to influence or affect the issue under determination." *Id.* (quoting U.S.S.G. § 3C1.1 cmt. 6). The Eleventh Circuit has "held that the threshold for materiality under the commentary to section 3C1.1 is

4

'conspicuously low.'" *Id.* (quoting *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir. 1992)).

In this case, the defendant lied to the Court at the change-of-plea hearing when he denied removing the serial number and claimed he did not know why the serial number was removed. At a minimum, the defendant materially misled the Court regarding his true knowledge about the circumstances under which the serial number was removed.

Prior to the offense, the defendant posted a video on his Instagram account that depicts him wielding the same pistol *prior to* the serial number being removed. ECF No. 24 at 3. The video also depicts the defendant in possession of another firearm and a trafficking amount of marijuana. *See id.* As illustrated in the images below, in order for the serial number to be removed, it had to be cut off from the frame:

**PSA Dagger 9mm Pistol with Serial Number**        **PSA Dagger 9mm Pistol Possessed by Defendant**



Under these circumstances, considering the defendant possessed the firearm before and after the serial number was removed, the defendant's claims that he was not involved in the removal of the serial number, and does not know why it was removed, are not credible. The defendant's apparent contention that the serial number was removed from the firearm by an unknown third-party after the defendant acquired possession of it, and then the firearm was returned to him without any explanation as to why the serial number had been removed, is completely implausible. The only credible explanation is that the defendant is the one who removed the serial number and the reason he removed it is because he either knew the firearm was stolen—e.g., when it was "encountered" at a pawn shop—or he intended to use the firearm in furtherance of his drug distribution (or other criminal) activities, or both.

Furthermore, this misrepresentation is material because the defendant's knowledge about and participation in the removal of the pistol's serial number is relevant to the nature and circumstances of the offense and the history and characteristics of the defendant, which could influence the choice of sentence within the guideline range. *See Reese*, 238 F. App'x at 464. Thus, the guidelines should also include a 2-level enhancement for obstruction. *See id.*; U.S.S.G. § 3C1.1.

### III.    The Guidelines Should Not Include an Adjustment for Acceptance of Responsibility.

For substantially the same reason as the obstruction enhancement, the defendant should not get a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. PSR ¶ 34. "The commentary for section 3E1.1(a) provides that a defendant who receives an obstruction-of-justice enhancement ordinarily has not accepted responsibility for his conduct, although there may be 'extraordinary cases' in which both adjustments will apply." *Reese*, 238 F. App'x at 464. Further, "[t]he decision not to apply this reduction 'is entitled to great deference on review, because '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.'" *Id.* (quoting *United States v. Moriarty*, 429 F.3d 1012, 1022–23 (11th Cir. 2005)).

This is not an "extraordinary" case within the meaning of § 3E1.1. Although the defendant admitted that he knew the serial number had been removed, he "also attempted to present himself in a better than truthful light" by expressly denying relevant conduct concerning the circumstances and reasons under which the serial number was removed. *Id.* As such, the Court is within its rights not to apply the acceptance-of-responsibility reduction. *See id.*

### IV.    The Correct Guidelines Calculation

In sum, taking into account the 4-level enhancement under § 2K2.1(b)(4)(B)(ii) and the 2-level enhancement under § 3C1.1, the adjusted offense

level should be 18 (instead of 12). PSR ¶ 32. The offense level should not be reduced based upon the defendant's lack of acceptance of responsibility. *Id.* ¶ 34. Thus, the total offense level should be 18 (instead of 10), *id.* ¶ 35, resulting in a guideline imprisonment range of 27–33 months, *id.* ¶ 63.

**V.      The Guidelines Do Not Account for The Defendant's Possession of a High-Capacity Magazine or Flight from Law Enforcement.**

Notwithstanding the increased guideline imprisonment range, the guidelines still do not account for the defendant's possession of a high-capacity magazine and the dangerous circumstances under which he discarded the loaded firearm. There is no dispute that the firearm that the defendant placed in the landscaping of an apartment complex while fleeing had an extended magazine loaded with 22 rounds of ammunition. ECF No. 24 at 1. If the defendant were a prohibited person, this would almost double the defendant's base offense level to 20. *See* U.S.S.G. § 2K2.1(a)(4)(B). Although the government is not advocating that the defendant was a prohibited person, the defendant's possession of a semiautomatic firearm that was capable of accepting a large-capacity magazine is still a relevant consideration that is otherwise unaccounted for, especially considering the loaded firearm could have been retrieved and (mis)used by anyone who found it prior to law enforcement.

8

**VI.    The Guidelines Do Not Account for The Defendant's Gang Affiliation and Drug Distribution Activities.**

Finally, the guidelines do not account for the defendant's gang affiliation and drug distribution activities. This is relevant to the history and characteristics of the defendant and the need for the sentence imposed to protect the public from further crimes of the defendant. As such, the PSR correctly references this information as potential aggravating circumstances. *See* PSR ¶ 88.

To the extent the defendant denies his gang affiliation or drug distribution activities, the government submits the following information in support. On social media, the defendant has openly claimed affiliation with the Bloods and the "43rd Street" hybrid neighborhood gang, which is further associated with the color purple. Moreover, the defendant regularly posts images or videos of himself in possession of firearms and trafficking amounts of marijuana. For example:

1. The defendant's Instagram username is "4stksoujia3_". The "4" in the front and the "3" in the back is a reference to 43rd Street. "Soujia" is likely a reference to the defendant's rank as a "worker." And "stk" is likely a reference to an STK 1911—a compact 9mm semi-automatic pistol manufactured by Rock Island Armory.

2. The defendant's registered email address is "otylisoujiaa43@icloud.com." The defendant added this email to his Instagram account on September 30, 2025. The defendant's prior email addresses was

9

"lukkyyeendled4300@icloud.com." Both email addresses include explicit references to "43."

3. On September 29, 2025, another user asked the defendant, "we still walk wit da same people? I need sum mo food 5." The defendant responded, "We redline aka Pardon steppaz or redspeal gangstaz." In a separate message, the defendant said, "Yal walk wit me," followed by, "But I rolled under walkdownV."

4. On August 10, 2025, the defendant reposted a video of other individuals with the text: "43MEMBER B HOME SOON."



5. On June 12, 2025, the defendant posted the following photograph of himself standing near large bags of marijuana while smoking:



In the text of the post, the defendant stated, "Ima 4tr3y" followed by two purple hearts and other text:



11

Numerous other users responded to this post by posting purple hearts.

One user responded: **Text** 43soulja 💯 🩸 💜

6. On September 16, 2025, the defendant re-posted the following image of an individual with a firearm and a blood drop emoji followed by a purple heart emoji:



7. On September 12, 2025, the defendant posted the following photograph of himself displaying hand gestures that depict a "4" and a "3":



Story Id 18070236374136717
Time 2025-09-12 01:52:38 UTC
Privacy Setting PRIVATE

▶ 0:00 / 0:15

Meta Platforms Business Record Page 5379

Linked Media File: linked_media/archived_stories_18070236374136717.mp4

8. On August 23, 2025, the defendant posted a photograph of himself holding a large bag of marijuana with multiple blood references:



14

9. On August 4, 2025, the defendant posted a picture of himself holding two guns with blood drop emojis over his head:



All of this information was obtained pursuant to a search warrant to Meta and disclosed to the defense as part of the initial discovery in this case. These examples demonstrate that at the time of the offense, the defendant was in fact a member of a gang and actively engaged in the trafficking of marijuana. The government respectfully requests that the Court consider these facts at sentencing.

Date: April 3, 2026                              Respectfully submitted,

                                                 JOHN P. HEEKIN
                                                 United States Attorney


                                                 _____
                                                 Adam Hapner
                                                 Assistant United States Attorney
                                                 Florida Bar No. 112006
                                                 401 SE First Ave, Ste 211
                                                 Gainesville, Florida 32601
                                                 (352) 378-0996
                                                 Adam.Hapner@usdoj.gov

16